WRIGHT, J.,
CONCURRING:
I agree with the majority insofar as it holds that Appellant, as a disabled person, may not file the divorce action on behalf of himself. However, I would go further and overrule Johnson. I believe that if Appellant returns to district court seeking a guardian- for the divorce action, and the district court finds that Appellant is still under a disability requiring a guardian, it should, in the- least, appoint a limited *10 guardian for the divorce action (as his current guardian’s interests conflict with his own insofar as the divorce). The newly-appointed guardian would then have the responsibility to determine Appellant’s best interests—keeping in mind that, if Appellant is still disabled, he will not by virtue of the divorce regain the ability to make financial decisions for himself. In making this determination, the guardian must keep in mind the uniquely personal and emotional nature of a divorce action. It may be the case that even if it would seem in other ways ■ to be in Appellant’s best interests that he stay married to Carolyn, that it is not in the best interests of his emotional health.
The guardian must carefully weight Appellant’s personal dignity and the unique nature of the dispute in making the best interests determination. Disabled persons are still, first and foremost, persons. They deserve the same basic human dignity and respect the rest of us enjoy. That dignity must include the ability to leave an irretrievably broken marriage—just as anyone else could. If the guardian decides the divorce action is, in fact, in Appellant’s best interests, I believe that guardian should then be able to properly file the divorce petition on Appellant’s behalf in the family court. However, because this procedure was not followed, I concur with the majority’s result. As a disabled person, Appellant simply could not file the suit on his own behalf.
Shifting my attention to Johnson, 294 Ky. 77, 170 S.W.2d 889, I note that case was decided more than seventy years ago at a time when no-fault divorce was not the law of the Commonwealth. After holding that guardians could not bring a divorce action on behalf of a disabled individual, the Johnson Court noted: “It may be that in some cases a hardship will be worked by the conclusion we have reached—such may be the case here—but stability of the marriage relation is a matter of public concern and, in the absence of specific legislative declaration to the contrary, its continuance or dissolution should not be dependent on the pleasure or discretion of a legal representative.” Id. The law surrounding divorce was entirely different in 1943, as was the public concern surrounding “the stability of the marriage relation.” Id. Not only have our statutes changed, but our world has changed as well. More than seventy years later, I no longer see the public’s concern in the stability of marriage as trumping the best interests of a disabled individual.
My reasoning behind this change becomes clear when you look to the recent Court of Appeals case of Brockman ex rel. Jennings v. Young, No. 2010-CA-001354-MR, 2011 WL 5419713 (Ky. Ct. App. Nov. 10, 2011). In Brockman, just such a hardship as hypothesized by the Johnson Court came to fruition. When Brockman and Young married, Brockman suffered from Alzheimer’s disease. A year after the couple exchanged their vows, the Cabinet for Health and Family Services opened an investigation into Young’s possible financial exploitation of Brockman. Following this investigation, Brockman’s daughters filed a petition in district court to determine whether a guardian should be appointed for their mother. Initially, the court appointed Young as Brockman’s guardian. However, two years later, Brockman’s daughters filed a motion- to remove Young as guardian after he stopped making payments to the nursing facility where their mother resided. Young voluntarily relinquished his guardianship and the trial court named Brockman’s daughters as her co-guardians,
The next year, Brockman, by and through her co-guardians, filed a motion for dissolution of her marriage to Young. *11 Young filed a motion to dismiss, claiming that Brockman’s guardians lacked the legal authority to file for divorce on Brock-man’s behalf. The trial court granted the motion to dismiss and the Court of Appeals affirmed, albeit reluctantly, stating: While we must conclude that the trial court properly found that Johnson controls the matter herein, we agree with Brock-man that modem developments in the law have begun to erode the underpinnings of this rule. We believe that the liberalization of divorce law with the creation of no-fault divorce as well as the expansion of guardianship powers certainly call in to question the viability of the holding in Johnson. Brockman, at *4. However, in spite of its strong language, the Court of Appeals acknowledged its inability to overrule Johnson. This Court, however, possesses the power to overrule Johnson—and I would exercise that power and do so now.
As this Court held in DeGrella By & Through Parrent v. Elston, 858 S.W.2d 698, 704 (Ky. 1998), “[w]e view the statutes related to ‘Guardianship and Conservator-ship for Disabled Persons,’ KRS-387.500 et seq., as remedial rather than exclusive. These statutes intend to provide services for incompetent persons not only as specifically articulated but also as reasonably inferable from the nature of the powers of a guardian .... ” This Court has also held that “[t]he right to act for the incompetent in all cases has become recognized in this country as the doctrine of substituted judgment and is broad‘enough not only to cover property but also to cover all matters touching on the well-being of the ward.” Strunk v. Strunk, 445 S.W.2d 145, 148 (Ky. 1969).
Therefore, I do not view the fact that the guardianship statutes do not specifically delineate the power to file a divorce action on behalf of a disabled person as one of the guardian’s enumerated powers as fatal; In fact, our statutes make it clear that “[g]uardian’ means any individual, agency, or corporation appointed by the court to have full care, custody, and control of a disabled person and to manage his financial resources.” KRS § 387.510(c). To read the phrase “full care, custody, and control” to include the ability to institute divorce proceedings on behalf of the ward is riot a stretch.
Hughes and Noble, JJ., join.